Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JANCARLOS VELÁZQUEZ VÁZQUEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2026RA00223 | Revisión administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Revisión administrativa núm.:<br>B-277-26<br>B-314-26<br><br>Sobre:<br>Regla 9 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

El Departamento de Corrección y Rehabilitación ("Corrección") impuso ciertas medidas bajo la Regla 9, *infra,* sobre *Suspensión de Privilegios por Medida de Seguridad.* Según se explica a continuación, concluimos que no se ha demostrado que Corrección haya cometido algún error al responder a dos solicitudes de remedio administrativo relacionadas esencialmente con la imposición, por 10 días, de las referidas medidas.

I.

El 5 de febrero de 2026, el Sr. Jancarlos Velázquez Vázquez (el "Recurrente"), miembro de la población correccional, presentó una *Solicitud de Remedio Administrativo* (B-277-26, o la "Primera Solicitud"). Señaló que, el 28 de enero, se le removió de su celda porque se realizaría un registro en la unidad. Alega que, al regresar a la celda, había un "desorden total" y le "faltaban pertenencias". Indicó que se le informó que, al haberse ocupado contrabando, se

iniciaría una "investigación bajo regla 9" y que, como resultado, desde ese día, sus privilegios se habían afectado.

El 9 de febrero, Corrección suscribió una respuesta a la Primera Solicitud, la cual se le entregó al Recurrente el 13 de febrero. Mediante la misma, se le informó al Recurrente que se había determinado dejar sin efecto las medidas tomadas bajo la Regla 9, *infra*, por lo cual "se mantendrán todos los servicios como de costumbre".

El Recurrente solicitó reconsideración y, mediante una Resolución, notificada el 20 de abril, Corrección señaló que, "si al momento del registro no se le entrega recibo de pertenencias es porque lo ocupado se considera contrabando."

Mientras tanto, el 12 de febrero de 2026, el Recurrente presentó otra *Solicitud de Remedio Administrativo* (B-314-26, o la "Segunda Solicitud"). Solicitó que se "divulgue la resolución de la investigación" bajo la Regla 9, *infra*, y que se explique "por qué no se proveyó recreación pasiva y llamadas … durante el periodo que duró la investigación".

Corrección emitió una Respuesta mediante la cual reiteró que la referida investigación había culminado.

El Recurrente solicitó reconsideración y, mediante una Resolución, notificada el 20 de abril, Corrección emitió una Resolución. Se consignó que la investigación bajo la Regla 9, *infra*, tuvo una vigencia de 10 días, por disposición reglamentaria y que, en este caso, la misma había culminado el 6 de febrero. Se dispuso que, "en cuanto a la Resolución, no se le provee a la población correccional, ya que no le afecta".

Inconforme con el desenlace de las solicitudes de referencia, el 30 de abril, el Recurrente presentó el recurso de referencia. Reitera que, mientras duró la investigación, "se restringieron derechos básicos tales como llamadas telefónicas, recreación

pasiva, comunicación efectiva con el exterior y visita social", todo ello a pesar de que no hubo "hallazgo de contrabando" en la celda del Recurrente. Arguye que no hubo "notificación adecuada de los cargos" ni "oportunidad real de defensa". También plantea que la "medida impuesta result[ó] en un castigo colectivo encubierto desproporcionado". Solicita que se declare "nula e improcedente la aplicación de la Regla 9", que se le devuelvan sus pertenencias, que se investigue a los funcionarios involucrados en la determinación de investigar bajo la Regla 9, *infra*, y que se ordene el traslado de los mismos a otras instituciones. Disponemos.

## II.

Surge del récord que, en la Institución Bayamón 501, y a partir del 28 de enero de 2026, se activó una investigación bajo la Regla 9 del Reglamento Núm. 9221 (la "Regla 9"), denominado *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, aprobado el 8 de octubre de 2020. De conformidad, se suspendieron los siguientes privilegios hasta el 6 de febrero: recreación activa, visita, comisaría (salvo artículos de aseo personal), entrega de correspondencia regular (salvo lo "legal") y actividades extracurriculares. Esta investigación culminó el 6 de febrero, sin que solicitara su extensión, por lo que **los referidos privilegios se comenzaron a disfrutar nuevamente a partir del 7 de febrero.**

La Regla 9 le permite a Corrección suspenderle privilegios a los confinados como una medida de seguridad, no como una medida disciplinaria. La Regla 9 dispone lo siguiente:

> REGLA 9 — SUSPENSIÓN DE PRIVILEGIOS POR MEDIDA DE SEGURIDAD
>
> 1. El superintendente de la institución correccional podrá suspender los privilegios, sin celebración de vista administrativa, por un período de tiempo que no exceda a diez (10) días calendarios, en aquellas circunstancias que atenten contra la seguridad institucional. El Superintendente no podrá extender el término

expresamente dispuesto en este inciso. Bajo ninguna circunstancia, esta disposición podrá ser utilizada por el Superintendente de la institución correccional como medida disciplinaria.

2. Queda prohibida la cancelación del privilegio de visita a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Sin embargo, esto no impedirá la suspensión de este privilegio cuando existan otras razones que no sean de índole disciplinario que así lo requieran y que estén en total acorde con las circunstancias específicamente establecidas para afianzar la seguridad. En estos casos, deberá entenderse que la suspensión de privilegios responde estrictamente a una medida seguridad y no a una medida disciplinaria.

3. El superintendente deberá notificar por escrito a la Oficina de Asuntos Legales la acción tomada dentro del próximo día laborable de haber tomado la acción. El Director de la Oficina de Asuntos Legales o su representante, referirá el asunto a la Oficina de Investigaciones del Sistema Correccional (OISC). La investigación será conducida por la Oficina de Investigaciones del Sistema Correccional (OISC), con el propósito de determinar si existe justa causa para extender la suspensión de privilegios por razones de seguridad. Los privilegios podrán ser suspendidos por razones de seguridad, bajo una de las siguientes circunstancias:

a. En caso de motín, fuga, disturbio, su tentativa o cualquier otra actividad o evento que ponga en riesgo la seguridad, la tranquilidad o el normal funcionamiento institucional. Esto incluye, pero sin limitarse a, cualquier amenaza contra la integridad física o la propiedad de un miembro de la población correccional, o cualquier otra persona, o contra la seguridad de la institución correccional.

b. Cuando ocurra una agresión a un miembro de la población correccional y la misma sea ejecutada por seis (6) o más miembros de la población correccional.

c. Cuando un módulo o unidad de vivienda de la institución correccional se niegue o se resista a someterse a las pruebas de detección de sustancias controladas, alcohol o cualquier otra prueba que se utilice para estos propósitos o impida que pueda llevarse a cabo dicha prueba.

d. Cuando ocurran hallazgos de cualquier contrabando peligroso, tal como armas de fuego, sustancias controladas, artefactos explosivos o cualquier otro material prohibido por ley o reglamento.

Así pues, el Superintendente de una institución correccional puede suspender los privilegios de todos, o de un grupo, de los

miembros de la institución cuando, según su criterio, exista una situación de las previstas en la Regla 9, cuyo denominador común es que atentan contra la seguridad institucional. Ello sin vista previa, siempre que la suspensión no exceda de diez días.

Ahora bien, una vez ejecutada dicha facultad, el referido funcionario viene llamado a notificar su actuación. Además, si a su juicio la situación amerita que se extienda el término de suspensión de privilegios, Corrección celebrará una vista administrativa, luego de lo cual adjudicará si se concede la extensión.

En fin, la Regla 9 es una medida de seguridad que se impone con el fin de proteger la institución, independientemente de que un confinado haya violado o no algún código disciplinario de forma individual. **La Regla 9 no es una sanción disciplinaria colectiva sino una medida de seguridad para la protección de la población correccional y de las personas que trabajan en la institución**.

### III.

De otra parte, Corrección tiene un mecanismo administrativo que le permite a un confinado presentar una queja o solicitud relacionada con sus condiciones de confinamiento. En efecto, el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583, aprobado el 4 de mayo de 2015, tiene como objetivo principal que "toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, para su atención, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la radicación de pleitos en los Tribunales de Justicia".[1] Este Reglamento establece un proceso

---

[1] Reglamento Núm. 8583, págs. 1-2.

para ventilar las quejas y solicitudes de los confinados, el cual va desde la presentación de la solicitud del remedio administrativo hasta la resolución de la reconsideración por el (o la) Coordinador(a) Regional del Programa.[2]

El Reglamento Núm. 8583, dispone lo siguiente en cuanto a la jurisdicción de la División de Remedios Administrativos:

> 1. La División tendrá jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, relacionada directa o indirectamente con:
>
> a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional.
>
> b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
>
> c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".
>
> d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA)(115.5 la, d, 115.52-b1, b2, b3).[3]

Ante una solicitud de remedio, un(a) Evaluador(a) de Corrección emitirá una Respuesta, en la cual "contesta la solicitud del remedio administrativo".[4] De dicha respuesta, el confinado puede solicitar revisión a un(a) Coordinador(a), quien deberá emitir una Resolución que contenga "un breve resumen de los hechos que motivaron la solicitud, el derecho aplicable y la disposición o solución a la controversia planteada".[5] La determinación de Corrección no es final y revisable hasta que el (o la) Coordinador(a) resuelva la llamada "reconsideración".

---

[2] *Íd.*, Reglas XII-XV.
[3] Íd., Regla VI(l).
[4] Íd., Regla IV (20).
[5] Íd., Regla IV (21) y (23), y Regla XIV (1).

IV.

Concluimos que no se ha demostrado que Corrección haya cometido algún error al atender las solicitudes de remedio de referencia. Veamos.

En cuanto se plantea que no se justificaba la aplicación de la Regla 9, concluimos que no tenemos jurisdicción para atender este planteamiento. Adviértase que esta determinación administrativa no es producto, ni de un proceso disciplinario contra un miembro de la población correccional, ni de la adjudicación de una solicitud de remedio administrativo. Tampoco se trata de una determinación que adjudique los derechos u obligaciones del Recurrente.

En vez, una medida tomada bajo la Regla 9, por su naturaleza, es administrativa, no cuasi-judicial. Se trata de una medida profiláctica de seguridad que no requiere adjudicar la responsabilidad individual de confinado alguno. Puesto de otra forma, es una medida administrativa de tipo investigativo y gerencial que no puede ser objeto de revisión judicial por parte de este tribunal.

Además, y en cualquier caso, se trataría de un asunto académico, pues cesó el término de 10 días durante el cual estuvo activa la investigación. Por tanto, cualquier determinación sobre si era apropiada o no la aplicación de la Regla 9 no afectaría de modo alguno la situación actual del Recurrente.

Tampoco proceden los demás remedios solicitados por el Recurrente. No tenemos autoridad para ordenar que se investigue o traslade a un funcionario de Corrección, pues ello únicamente recae bajo la autoridad ejecutiva y administrativa de dicha agencia, y no bajo la autoridad judicial. Finalmente, no se justificó adecuadamente, con apoyo en hechos específicos sustentados adecuadamente por el récord, que se haya privado al Recurrente de

alguna pertenencia legítima, por lo que no podemos concluir que se justifique la concesión de un remedio al respecto.

V.

Por los fundamentos expresados, se confirman las resoluciones recurridas.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones